Michael R. Reese (Cal. State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500

Kevin Laukaitis
*klaukaitis@laukaitislaw.com*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Telephone: (215) 559-6072

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**(SOUTHERN DIVISION)**

| | |
|---|---|
| **RICARDO ANDRIO, individually, and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**DRAFTKINGS, INC. and GUS III, LLC d/b/a DRAFTKINGS PREDICTIONS,**<br><br>**Defendants.** | **CASE NO. 26-cv-2199**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ricardo Andrio ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants, DraftKings, Inc. and GUS III, LLC d/b/a DraftKings Predictions ("Defendants" or "DraftKings"). Plaintiff's allegations as to Plaintiff's own actions are based on personal knowledge. The other allegations are based on counsel's investigation, and information and belief.

**INTRODUCTION AND FACTUAL BACKGROUND**

1. This putative class action seeks to hold Defendants responsible for representations made in connection with the sale of its services for illegal sports betting.

2. DraftKings is a leading U.S. online and app-based sports gambling operator, offering licensed mobile and retail sportsbook services in numerous states across the country.

3. Yet several states have not granted DraftKings authorization to operate a sportsbook. In those jurisdictions, sports gambling is either expressly prohibited or permitted only through licensed operators, and DraftKings has not been issued the required licenses.

4. After years of refraining from operating in these states, DraftKings has now sought to evade and circumvent state laws that bar its sportsbook operations. Through its wholly owned subsidiary, GUS III, LLC d/b/a DraftKings Predictions, DraftKings has begun offering "DraftKings Predictions": an online and app-based sports wagering product falsely characterized as "event contracts."

5. DraftKings deploys this product in jurisdictions where unlicensed sports betting is categorically illegal.

6. DraftKings markets these sports prediction Product as "event contracts" or "trading," rather than sports betting, thereby creating the misleading impression that the Product are materially different from, and more lawful than, traditional wagers.

7. DraftKings leverages its reputation as a licensed sportsbook by promoting Predictions to the same customer base and through the same platform, despite offering an unlicensed product that is, in substance, indistinguishable from sports betting.

8. By operating an unlicensed sports betting platform, DraftKings has violated California gambling laws and unjustly enriched itself at the expense of consumers.

9. Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this action to recover the amounts DraftKings Predictions unlawfully obtained from them, along with costs and attorneys' fees.

## PARTIES

10. Plaintiff Ricardo Andrio is a citizen of California who resides in Santa Ana, California.

11. To open and use his DraftKings Predictions account, Plaintiff was required to, and did, assent to the DraftKings Predictions Terms of Use. Those Terms provide that the parties' agreement is governed by the substantive law of California and that any claim arising out of or relating to his account, the DraftKings Predictions application, or the services must be brought in a court sitting in California.

12. Before Plaintiff placed wagers and lost money, DraftKings failed to disclose material facts concerning the nature and operation of DraftKings Predictions. DraftKings did not inform him that Predictions functioned as an unlicensed sportsbook; that DraftKings and its affiliates could, and did, take positions directly opposite his own; or that DraftKings profited from every transaction regardless of the outcome.

13. These omissions deprived Plaintiff of information essential to evaluating the risks and legality of the product.

14. Defendant DraftKings, Inc. is a Nevada corporation with its principal place of business and corporate headquarters located at 222 Berkeley Street, Boston, Massachusetts 02116. DraftKings conducts substantial and continuous business throughout all 50 states, the District of Columbia, and Puerto Rico. DraftKings operates a nationwide digital gaming platform that offers sports betting, online casino gaming, daily fantasy sports, lottery services, and event-contract wagering through its DraftKings Predictions platform.

15. Defendant GUS III, LLC d/b/a DraftKings Predictions is a Nevada limited liability company with its headquarters in Boston, Massachusetts and is a wholly owned subsidiary of DraftKings, Inc. Through DraftKings Predictions, GUS III, LLC offers sports-event contracts that are fully integrated into the DraftKings Sports application.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

17. This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in California. This Court also has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

18. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

19. Sports wagering is among the most heavily regulated industries in the United States. As states have long recognized, gambling poses significant risks to consumers, including addiction, financial exploitation, and deceptive business practices. Because of this, states strictly control who may offer wagering services and under what conditions those services may operate.

20. In the modern era of online and mobile sports gambling, regulation authority regarding sports gambling rests with the states. State legislatures have enacted their own statutory frameworks governing gambling within their borders, reflecting differing policy judgments about the risks and benefits of sports wagering.

21. Licensed sportsbooks implement technological safeguards, such as geolocation tied to a user's device and IP address, to prevent wagers from being placed in jurisdictions where such activity is unlawful.

22. In recent years, however, a new category of online sports betting platforms has emerged to circumvent state prohibitions on sports wagering: prediction markets.

23. These platforms offer "event contracts" tied to future outcomes, including sporting events, and claim that users are not placing wagers but instead participating in financial markets based on predictions.

24. Users speculate on the outcome of sporting events by purchasing binary contracts, such as whether a team will win, corresponding to "yes" or "no" outcomes.

25. Like a traditional sportsbook, the platform prices these contracts based on the likelihood of the event occurring, while incorporating a margin for the operator.

26. Users receive a fixed payout if the predicted outcome occurs; if it does not, the contract expires worthless and the user loses the amount paid.

27. This structure is identical to traditional sports betting: participants risk money on the outcome of a game, with financial gain or loss determined entirely by the result.

28. Although prediction market operators describe these wagers as "event contracts" or "market positions," the underlying activity remains speculation on sporting events. The terminology does not alter the fundamental nature of the transaction.

29. Since 2018, DraftKings has traditionally operated its sportsbook within established state regulatory frameworks.

30. DraftKings historically sought and obtained licenses from state gaming authorities and publicly represented that it complied with state-by-state regulatory schemes. DraftKings first became licensed in New Jersey in 2018 and now operates regulated sportsbooks in 27 states and the District of Columbia. DraftKings has long acknowledged that sports wagering may only be offered where authorized by state law and only through licensed operators, and it has implemented geolocation, identity

verification, and other safeguards to ensure compliance.

31. Despite this history, DraftKings recently pivoted toward the "prediction market" model. In December 2025, DraftKings launched "DraftKings Predictions," a platform that purports to allow users to trade contracts based on real-world events, including sporting contests.

32. DraftKings Predictions now operates in every state where DraftKings is not authorized to operate a licensed sportsbook.

33. Leveraging the trust it built as a licensed sportsbook operator, DraftKings markets Predictions directly to its existing customer base through in-app promotions and pop-up banners within its sportsbook interface.




34. Through DraftKings Predictions, users select outcomes of games and risk money on whether a team will win. If the predicted outcome occurs, the user receives a payout; if not, the user loses the funds paid. This is sports betting.

35. This pivot marks a departure from DraftKings' prior approach. Rather than seeking licensure before offering sports-related Product, DraftKings has structured Predictions to evade state regulatory frameworks.

36. DraftKings Predictions replicates every core feature of a sportsbook: it mirrors the visual layout, terminology, and mechanics of traditional betting platforms; users wager against DraftKings or its affiliates; DraftKings sets market parameters and profits from every transaction; and DraftKings' own Terms of Use confirm that its affiliates may act as market makers taking positions adverse to users.




37. Despite these features, DraftKings has not obtained the licenses required to offer sports wagering in numerous states, rendering DraftKings Predictions an illegal, unlicensed sportsbook.

38. DraftKings deceives consumers by marketing Predictions as a legitimate "prediction market" rather than a sports betting product, designing the platform to mimic a sportsbook while describing the activity as "trading", failing to implement responsible-gaming safeguards, permitting users as young as eighteen to trade, and

shifting all legal risk onto consumers through its Terms of Use, even while acknowledging active litigation and regulatory uncertainty surrounding event-contract legality.

**CLASS ACTION ALLEGATIONS (PURSUANT TO LOCAL RULE 23-2)**

39. ***Class Definition*:** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member the Class defined as follows:

> All citizens of California who spent money purchasing sports event contracts on the DraftKings Predictions mobile or web platforms.

40. Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

41. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

42. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

43. ***Numerosity*:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of consumers throughout California. Accordingly, it would be impracticable to join all members of the Class before the Court.

44. ***Commonality and Predominance*****:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendants' sports markets are unlawful;
- Whether Plaintiffs and each member of the Class lost money or other things of value through their use of DraftKings Predictions;
- Whether Defendants' conduct was unlawful, unfair, fraudulent, deceptive, and/or misleading under applicable law;
- Whether Plaintiffs and the Class sustained damages, and, if so, the appropriate measure of those damages;
- Whether Defendants have been unjustly enriched as a result of their conduct;
- Whether the DraftKings Predictions Terms of Use require the application of California substantive law to the claims asserted by Plaintiffs and the Class;
- Whether Defendants' operation of DraftKings Predictions without a sports-wagering license constitutes an unfair or deceptive act or practice;
- Whether Defendants, directly or through their affiliates, took positions adverse to their customers, profited from customer wagers regardless of outcome, and whether Defendants disclosed those facts;
- Whether Defendants' conduct was willful and knowing, and whether Defendants' refusal to grant relief in response to Plaintiffs' demand was made in bad faith, thereby entitling Plaintiffs and the Class to multiple damages; and
- Whether the release, disclaimer, limitation-of-liability, contractual limitations period, and remedy-waiver provisions in the Terms of Use are enforceable against the statutory claims asserted herein.

45. ***Typicality*****:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, made wagers on Defendants' product. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

46. ***Adequacy*****:** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

47. ***Superiority*****:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

48. Without a class action, Defendants will continue a course of action that will result in further damages to the Plaintiff and Members of the Class and will likely retain the benefits of its wrongdoing.

49. ***Notice***: Notice would be achieved via direct mail to the contact information of class members that Defendants maintain in their records.

## CAUSES OF ACTION

### COUNT I

### Violations of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) (On behalf of the Class)

50. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

51. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

52. Defendants' conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

53. Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendants' misconduct, as described herein.

54. Defendants' knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

***Defendants' Conduct Constitutes a Fraudulent Business Practice***

55. Defendants' conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendants' representations that the Product is a legitimate prediction market platform rather than a sports betting product.

56. Defendants were and are aware that their representations are material to consumers.

57. Defendants were and are aware that their representations are misleading, as

described herein.

58. Defendants had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Product.

59. There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

***Defendants' Conduct Constitutes an Unfair Business Practice***

60. Defendants' conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

61. Defendants' conduct violates the Immoral Test because Defendants intentionally makes the representations to increase sales of the Product.

62. Defendants' conduct is substantially injurious because consumers purchase the misrepresented Product in reliance on Defendants' representations.

63. Defendants' conduct also violates the "Balancing Test" because the utility of Defendants' conduct in labeling the Product with the representations is outweighed by the harm to consumers.

64. As set forth herein, the representations are an optional, voluntary advertising statement.

65. Defendants make the representations to increase sales of the Product and to the detriment of consumers, who are misled and deceived.

66. Consumers are directly harmed by Defendants' conduct in that they would not have purchased the Product if they had known the truth.

67. Defendants' conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

68. Defendants had an improper motive: to derive financial gain at the expense of accuracy or truthfulness in its practices related to the labeling and advertising of the Product.

69. There were reasonable alternatives available to Defendants to further

Defendants' legitimate business interests, other than the conduct described herein.

70. Plaintiff and members of the Class could not have reasonably avoided injury. Defendants' representations regarding the Product were likely to deceive, and Defendants knew or should have known that their representations were misleading.

71. Plaintiff purchased the Product with the reasonable belief that the Product was a legitimate prediction market, and without knowledge that the Product was in reality another sports betting product.

***Defendants' Conduct Constitutes an Unlawful Business Act***

72. Defendants' misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[1]

73. Defendants' conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

74. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

75. In addition, Defendants' representations constitute an "unlawful" practice

---

[1] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

because the Product representations are "false or misleading in any particular" and the Product is therefore adulterated and misbranded under the law. *See* 21 U.S.C. § 352; Cal. Health and Safety Code § 111550.

76. Because the Product is misbranded, it is not Legally Saleable. *See* Cal. Health and Safety Code §§ 110385, 111440, 111450.

77. Plaintiff and members of the Class could not have reasonably avoided injury. Defendants' uniform, material misrepresentations regarding the Product was likely to deceive, and Defendants knew or should have known that its misrepresentation was untrue and misleading.

78. Plaintiff and members of the Class have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Product, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

79. As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Product as a result of the wrongful conduct of Defendants.

80. Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

81. With respect to restitution under the UCL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

**COUNT II**
**Violation of California's False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**
**(On behalf of the Class)**

82. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendants.

84. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

85. Defendants violated § 17500 when it represented, through its false and misleading representations, that the Product possesses characteristics and value that it does not have, namely that the Product is a legitimate prediction market platform.

86. Defendants' deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Product.

87. Defendants' uniform, material representations regarding the Product was likely to deceive, and Defendants knew or should have known that its uniform misrepresentations were untrue and/or misleading.

88. Plaintiff purchased the Product in reliance on the representations made by Defendants, including that the Product was a legitimate prediction market and not a sports betting product.

89. Plaintiff and members of the Class have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the price paid to Defendants for the Product, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

90. The above acts of Defendants were and are likely to deceive reasonable consumers in violation of § 17500.

91. In making the representations alleged herein, Defendants knew or should

have known that the representations were deceptive and/or misleading, and acted in violation of § 17500.

92. As a direct and proximate result of Defendants' unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order requiring Defendants to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, as well as interests and attorneys' fees.

93. With respect to restitution under the FAL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C. For an order awarding, as appropriate, compensatory, statutory, and monetary damages to Plaintiff and the Class;

D. For an order awarding injunctive relief;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding pre-and post-judgment interest; and

G. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: August 13, 2026

Respectfully submitted,

/s/ *Michael R. Reese*

**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
*mreese@reesellp.com*
5454 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 559-6072
*klaukaitis@laukaitislaw.com*

*Attorneys for Plaintiff and the Proposed Class*